# EXHIBIT A

## (Hudson Liquor Liability Policy)



# LIQUOR LIABILITY INSURANCE POLICY

## HUDSON INSURANCE GROUP
### 100 William Street, 5th Floor
### NEW YORK, NY 10038

Form No. CVPG-1 (Ed. 7-12)

# HUDSON SPECIALTY INSURANCE COMPANY

Policy Number: HSLL-31135      (Renewal or Replacement of No.: New: . . . . . .)

## LIQUOR LIABILITY INSURANCE POLICY - DECLARATIONS

Part Two. This Declarations page and Liquor Liability Insurance Coverage Part with "Liquor Liability Insurance Policy Provisions - Part One" completes the above-numbered policy.

1. NAMED INSURED AND MAILING ADDRESS: **QUANTUM ULTRA LOUNGE, INC. DBA ONE ENTERTAINMENT-THE MOOSE LOUNGE**

      **SALT LAKE CITY, UT 84101**

2. POLICY PERIOD: From 06/02/2017 to 06/02/2018
 at 12:01 A.M. standard time at the named Insured's mailing address shown above.

      REPRESENTATIVE: **Scottish American Insurance General Agency**
                              **Santa Ana, CA**

3. The insurance afforded is only with respect to the Liquor Liability Insurance Coverage Part. The limit of the company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COVERAGE | LIMITS OF LIABILITY | ADVANCE AND MINIMUM POLICY TERM PREMIUM |
|---|---|---|
| Liquor Liability Insurance | See Liquor Liability Insurance Coverage Part for Limits of Liability | $ ▉ |
| Endorsements, Coverage Part and Forms made a part of this policy at time of issue (identified by form numbers): | TOTAL ADVANCE PREMIUM | $ ▉ |

CVPG-1 (Ed.7-12); L-4050D (Ed. 10-1-66 Rev. 4-1-09); L-40978 (Ed.8-1-02, Rev. 4-1-09); L-4050J (Ed. 10-1-66 Rev. 4-1-09); EXCL.2 (03/02); EAA-182 (11/03); CG 21 75 06 08 (06/08); L9106 (10/66); MEP-14 (11/89); ICX-1 (12/04); HSOS-1 (09/04)

Audit Period: **Policy Period**

4. The named Insured. Is: [ ] Individual    [ ] Joint Venture    [ ] Partnership
                    [x] Corporation    [ ] Limited Liability Company    [ ] Other

5. During the past three years no insurer has cancelled insurance, issued to the named Insured, similar to that afforded hereunder, unless otherwise stated herein.

Countersigned by: _Jaslyn Carlson_                  Date Signed: **06/20/2017**

                                                         Date Issued: **06/20/2017**

Form No. L-4050D (Ed. 10-1-66 Rev. 4-1-09)

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE MO.  DAY  YR. | | | ISSUED TO: | ISSUED BY: |
|---|---|---|---|---|---|
| HSLL-31135 | 6 | 2 | 2017 | QUANTUM ULTRA LOUNGE, INC. DBA ONE ENTERTAINMENT-THE MOOSE LOUNGE | Hudson Specialty Insurance Company 100 William Street, 5th Floor New York, NY  10038 |

## SCHEDULE - LIQUOR LIABILITY INSURANCE COVERAGE PART

This Schedule page when combined with the Liquor Liability Insurance Coverage Part (Pages 2 of 3 and 3 of 3) completes the above-numbered policy.

| A. | COVERAGE | LIMITS OF LIABILITY | ADVANCE PREMIUM |
|---|---|---|---|
| | LIQUOR LIABILITY | EACH COMMON CAUSE: $1,000,000 AGGREGATE: $2,000,000 | ████████ |

| B. | DESCRIPTION OF HAZARDS OF DESIGNATED INSURED PREMISES | RATE PER $100 | PREMIUM BASIS | ADVANCE/MINIMUM TERM PREMIUM |
|---|---|---|---|---|
| | CODE NUMBER:  1102-075-D Nightclubs or cabarets with dance floor with receipts for alcoholic beverages that are not greater than 75% of the combined annual receipts for food and alcohol | 1.528 | RECEIPTS $270,000.00 | ██████ |

When used as a premium basis:

**"receipts"** means the gross amount of money charged by the **named insured**  or by others during the policy period for the sale of all alcoholic beverages, and all other beverages used in connection therewith, including taxes, except taxes which the **named insured**  collects as a separate item, and remits directly to a governmental division, for which accurate records are maintained apart from other receipts.

| C. | Designated Insured Premises at Inception: |
|---|---|
| | ONE ENTERTAINMENT-THE MOOSE LOUNGE ████████ SALT LAKE CITY, UT  84101 |

Form No. L-4097S (Ed.8-1-02, Rev. 4-1-09)                                                                    Page 1 of 3



# LIQUOR LIABILITY INSURANCE COVERAGE PART

This Liquor Liability Insurance Coverage Part when combined with the Schedule (Page 1 of 3) completes said policy.

## I. LIQUOR LIABILITY INSURANCE COVERAGE

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because of injury to which this insurance applies, sustained by any person if such liability is imposed  upon the **insured** by reason of the selling, serving or giving of any alcoholic beverage at or from the **insured premises**, and the company shall have the right and duty to defend any suit against the **insured** seeking such **damages**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment  or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions:** This insurance does not apply:

a) to any obligation for which the **insured** or any carrier as his insurer may be held liable under any workers compensation, unemployment compensation or disability benefits law, or under any similar law;

b) to **bodily injury** to any employee of the **insured** arising out of and in the course of his employment by the **insured** or to any obligation of the **insured** to indemnify another because of **damages** arising out of such injury;

c) to injury arising out of any alcoholic beverages sold, served or given while any license therefor, required by law, is suspended or after such license expires, is cancelled or revoked;

d) to **bodily injury** or **property damage** arising out of the **named insured's** products or reliance upon a representation or warranty made at any time with respect thereto; but this exclusion does not apply to **bodily injury** or **property damage** for which the **insured** or his indemnitee may be held liable if such damage is imposed

(1) by, or, because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift distribution or use of any alcoholic beverage, or

(2) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person.

Form No. L-4097S (Ed. 8-1-02, Rev. 4-1-09)                                                  Page 2 of 3

## II. PERSONS INSURED

Each of the following is an **insured** to the extent set forth below:

a) if the **named insured** is designated in the Declarations as an individual, the person so designated and his or her spouse, but only with respect to the conduct of a business of which the person so designated is the sole owner;

b) if the **named insured** is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof, but only with respect to the conduct of the **named insured's** business;

c) if the **named insured** is designated in the Declarations as a limited liability company, the limited liability company so designated. Its members are also **insureds**, but only with respect to the conduct of the **named insured's** business. The limited liability company's managers are **insureds**, but only with respect to their duties as managers of the **named insured's** business.

d) If the **named insured** is designated in the Declarations as other than an individual, partnership, joint venture or limited liability company, the organization so designated and any **executive officers** and directors thereof, but only with respect to their duties as **executive officers** or directors of the **named insured**. Stockholders of the **named insured** are also **insureds**, but only with respect to their liability as stockholders.

This insurance does not apply to any injury arising out of the conduct of any partnership or joint venture of which the **insured** is a partner or member and which is not designated in the policy as a **named insured**.

## III. LIMITS OF LIABILITY

Regardless of the number of **insureds** under this insurance, the company's liability is limited as follows:

The limit of liability stated in the Schedule as applicable to "each common cause" is the total liability of the company for all **damages** sustained by one or more persons as the result of the selling, serving or giving of any alcoholic beverage to any one person.

The limit of liability stated in the Schedule as "aggregate" is, subject to the above provisions respecting "each common cause", the total limit of the company's liability hereunder for all **damages**. Such aggregate limit of liability shall apply separately to each **insured premises**.

## IV. POLICY PERIOD, TERRITORY

This insurance applies only to injury which occurs during the policy period within the **policy territory**.



## LIQUOR LIABILITY INSURANCE POLICY PROVISIONS – PART ONE

### THE COMPANY NAMED ON THE DECLARATIONS PAGE
#### (A capital stock corporation, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the Declarations made a part hereof and subject to all of the terms of this policy, agrees with the **named insured** as follows:

### SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

a. all expenses incurred by the company, all costs taxed against the **insured** in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

b. premiums on appeal bonds required in any such suit, and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, but the company shall have no obligation to apply for or furnish any such bonds.

c. expenses incurred by the **insured** for first aid to others at the time of an accident, for **bodily injury** to which this policy applies;

d. reasonable expenses incurred by the **insured** at the company's request in assisting the company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

### DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"**bodily injury**" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"**damages**" means all damages, including damages for death, care, loss of services, loss of support, or loss of use of property, which are payable because of injury  to which this insurance applies;

"**executive officer**" means only a person holding any of the officer positions created by the **named insured's** charter, constitution, by-laws, or any other similar governing document;

"**insured**" means any person or organization qualifying as an insured in the "Persons Insured" provision of the Liquor Liability Insurance Coverage Part. The insurance afforded applies separately to each **insured** against whom a claim is made or suit is brought, except with respect to the limits of the company's liability;

"**insured premises**" means:

(1) the premises designated in the Schedule – Liquor Liability Insurance Coverage Part; and

(2) any premises which the **named insured** acquires during the policy period for use in manufacturing, distributing, selling, serving or giving alcoholic beverages if (a) the **named insured** notifies the company within thirty (30) days after such acquisition, and (b) the **named insured** has no other valid and collectible insurance applicable to the loss; and

(3) any additional premises not described in items (1) and (2) above, but only if the Description of Hazards of Designated Insured Premises section of the Schedule – Liquor Liability Insurance Coverage Part includes:
   **(a)** Class Code 1162 Caterers – with both on and off premises operations, or
   **(b)** Class Code 1163 Caterers – with off premises operations only;

"**named insured**" means the person or organization named in Item 1. of the Declarations of this policy;

"**named insured's products**" means goods or products manufactured, sold, handled or distributed by the **named insured** or by others trading under his name, including any container thereof (other than a vehicle), but "**named insured's products**" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

"**occurrence**" means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**;

"**policy territory**" means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the **bodily injury** or **property damage** does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to **damages** because of **bodily injury** or **property damage** arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such **damages** is brought within such territory;

"**property damage**" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

## CONDITIONS

1. **Premium**: The first **named insured** shown in the Declarations is responsible for the payment of all premiums; and will be the payee for any return premiums the company pays.

   All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

   Premium designated in this policy as "advance premium" is a minimum and deposit premium only, unless specified as a flat charge. At the close of each audit period (or part thereof terminating with the end of the policy period) designated in the Declarations as the audit period, the company will compute the earned premium for such audit period. If the earned premium determined upon audit exceeds the advance premium shown in the Declarations, the first **named insured** shall pay the excess to the company. Upon notice thereof to the **named insured**, the excess premium is promptly due and payable to the company. If the earned premium determined upon audit is less than the advance premium shown in the Declarations, the advance premium, which is a minimum and deposit premium, shall apply, with no return premium payable to the **named insured**.

   The first **named insured** shown in the Declarations shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct. If this policy is cancelled for any reason and the company is unable to obtain the actual receipts for the period the policy was in force after making a reasonable effort to obtain the actual receipts, the advance premium will be deemed to be fully earned by the company.

   In the event that the **named insured** has not fully complied with the Premium and the Inspection and Audit Conditions of the policy that preceded this policy, the company may:

   a) cancel this policy,

   b) offset any return premium due under this policy against any audited or otherwise earned premium due under the policy that preceded this policy, and/or

    c) withhold any return premium due under this policy until such time as the **named insured** has fully cooperated with the Premium and the Inspection and Audit Conditions of the policy that preceded this policy.

2. **Inspection and Audit**: The company shall be permitted but not obligated to inspect the **named insured's** property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the **named insured** or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

   The company may examine and audit the **named insured's** books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

3. **Financial Responsibility Laws**: When this policy is certified as proof of financial responsibility for the future under the provisions of any financial responsibility law, such insurance as is afforded by this policy for **bodily injury** liability or for **property damage** liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The **insured** agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

4. **Insured's Duties in the Event of Injury, Claim or Suit:**

       a. When an injury occurs, written notice containing particulars sufficient to identify the **insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **insured** to the company or any of its authorized agents as soon as practicable.

       b. If claim is made or suit is brought against the **insured**, the **insured** shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

       c. The **insured** shall cooperate with the company and upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of injury or damage with respect to which insurance is afforded under this policy; and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The **insured** shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident.

5. **Action Against Company**: No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **insured's** obligation to pay shall have been finally determined either by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the **insured** to determine the **insured's** liability, nor shall the company be impleaded by the **insured** or his legal representative. Bankruptcy or insolvency of the **insured** or of the **insured's** estate shall not relieve the company of any of its obligations hereunder.

6. **Other Insurance**: The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the **insured** has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

   a. **Contribution by Equal Shares**. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

   b. **Contribution by Limits**. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

7. **Subrogation**: In the event of any payment under this policy, the company shall be subrogated to all of the **insured's** rights of recovery therefor against any person or organization and the **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **insured** shall do nothing after loss to prejudice such rights.

8. **Changes**: This policy contains all of the agreements between the **named insured** and the company concerning the insurance afforded hereunder. The first **named insured** shown in the Declarations is authorized to make changes in the terms of this policy, but only with the consent of the company. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

9. **Assignment**: Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the **named insured** shall die, such insurance as is afforded by this policy shall apply (a) to the **named insured's** legal representative, as the **named insured**, but only while acting within the scope of his duties as such, and (b) with respect to the property of the **named insured**, to the person having proper temporary custody thereof, as **insured**, but only until the appointment and qualification of the legal representative.

10. **Three Year Policy**: If this policy is issued for a period of three (3) years:

    a. the policy period is comprised of three (3) consecutive annual periods;

    b. the rates are subject to amendment for the second and third annual periods, in accordance with the company's rules and rating plans. Amended rates shall be stated by endorsement issued to form a part of this policy; and

    c. the aggregate limit of liability shall apply separately to each consecutive annual period.

11. **Cancellation**: This policy may be cancelled by the first **named insured** shown in the Declarations by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the first **named insured** shown in the Declarations, at the mailing address shown in this policy, written notice stating when not less than ten (10) days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the company or by the first **named insured** shown in the Declarations shall be equivalent to mailing.

If the first **named insured** shown in the Declarations cancels, earned premium shall be computed in accordance with the customary short rate table and procedure.  If the company cancels, earned premium shall be computed pro rata.  Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

12. **Declarations:** By acceptance of this policy, the **named insured** agrees that the statements in the Declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**IN WITNESS WHEREOF,** the company has caused this policy to be signed by its President and Corporate Secretary at New York, New York and countersigned on the Declarations page by an authorized agent of the company.

President

Secretary

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

This endorsement modifies the provisions of this policy relating to Liquor Liability Insurance.

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to **bodily injury** or **property damage**

   1. with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   2. resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

Form No. L4050J (Ed. 10-1-66, Rev. 4-1-09)                                      Page 7 of 9

C. Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material,** if

1. the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (b) has been discharged or dispersed therefrom;

2. the **nuclear material** is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

3. the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 3. applies only to **property damage** to such **nuclear facility** and any property thereat.

II. As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties;

"**nuclear material**" means **source material**, **special nuclear material** or **byproduct material**;

"**source material**", "**special nuclear material**", and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

"**waste**" means any waste material (a) containing **byproduct material** other than the tailings or **wastes** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and (b) resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**;

"**nuclear facility**" means

A. any nuclear reactor,

B. any equipment or device designed or used for (1) separating the isotopes or uranium or plutonium, (2) processing or utilizing **spent fuel**, of (3) handling, processing or packaging **waste**,

C. any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

D. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**property damage**" includes all forms of radioactive contamination of property.

Endorsement No.   At Inception

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE MO.  DAY  YR. | | | ISSUED TO: | ISSUED BY: |
|---|---|---|---|---|---|
| HSLL-31135 | 6 | 2 | 2017 | QUANTUM ULTRA LOUNGE, INC. DBA ONE ENTERTAINMENT-THE MOOSE LOUNGE | Hudson Specialty Insurance Company 100 William Street, 5th Floor New York, NY  10038 |

### THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY.

### ADDITIONAL EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that no coverage is provided under the policy to which this endorsement is attached, for either defense or indemnification, for any claim asserting a cause of action within any of the Exclusions listed below:

1. **Pollution Exclusion - Absolute**
   This insurance does not apply to any claim for **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, whether or not sudden or accidental.

2. **Exclusion for Hazard from Silica, Asbestos, and Any Other Allied Compound Substance or Product**
   This insurance does not apply to any claim, suit or action based upon or alleging **bodily injury**, sickness, disability, death or damage arising out of inhalation of or from exposure to silica or asbestos at any time whatsoever.  The term "asbestos" shall include any compound, substance or product or fibers thereof generally referred to as "asbestos" and shall also include any other allied compound, substance or product or fibers thereof which is used as a non-combustible, non-conducting or chemically resistant material.

3. **War Exclusion**
   Any exclusion for war, warlike or military action whether or not specifically denominated as such, is deleted and replaced by the following:

   Notwithstanding any provision of this policy to the contrary, this insurance does not apply to injury, damage, loss, cost or expense, due to war, whether or not declared, or any act or condition incident to war.  War includes civil war, insurrection, rebellion, revolution or action taken by governmental authority in hindering or defending against any of these.

   This exclusion does not affect the applicability of, and is in addition to, any exclusion of **terrorism**, whether or not specifically denominated as such.

Endorsement No.  At Inception

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE MO. DAY YR. | | | ISSUED TO: | ISSUED BY: |
|---|---|---|---|---|---|
| HSLL-31135 | 6 | 2 | 2017 | QUANTUM ULTRA LOUNGE, INC. DBA ONE ENTERTAINMENT-THE MOOSE LOUNGE | Hudson Specialty Insurance Company 100 William Street, 5th Floor New York, NY 10038 |

**THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY.**

**ADDITIONAL EXCLUSIONS ENDORSEMENT - Continued**

4. **Terrorism Exclusion**

Notwithstanding any other provision of this policy to the contrary, this insurance does not apply to any loss, cost, expense, damage, injury or economic detriment, whether arising by contract, operation of law or otherwise whether or not concurrent or in any sequence with any other cause or event, that in any way, form or manner, directly or indirectly, arises out of, results from or is caused by **terrorism**, and also including any action taken in hindering or defending against **terrorism**.

**Terrorism** means any act of force or violence or other illegal means, whether actual, alleged or threatened, by any person, persons, group, private or governmental entity or entities, or any other type of organization of any nature whatsoever, whether the identity of which is known or unknown, that appears to be for political, religious, racial, ethnic, ideological, ecological or social purposes, objectives or motives and that causes or appears to be intended to cause:

   1. alarm, fright, fear of danger, concern or apprehension for public safety;

   2. the interference or disruption of an electronic, communication, information or mechanical system;

   3. the intimidation or coercion of the civilian population or any governmental body; or

   4. the alteration of the policies, foreign or domestic of any governental body.

This exclusion does not affect the applicability of, and is in addition to, any exclusion of war, warlike or military action, whether or not specifically denominated as such.

5. **Indoor Air Quality Exclusion**

This insurance does not apply to:

A. **Bodily injury** or **property damage** arising out of, resulting from, caused or contributed to by mold, mildew and/or other conditions affecting indoor air quality; or

Endorsement No.  At Inception

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE MO.  DAY  YR. | | | ISSUED TO: | ISSUED BY: |
|---|---|---|---|---|---|
| HSLL-31135 | 6 | 2 | 2017 | QUANTUM ULTRA LOUNGE, INC. DBA ONE ENTERTAINMENT-THE MOOSE LOUNGE | Hudson Specialty Insurance Company 100 William Street, 5th Floor New York, NY  10038 |

### THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY.

### ADDITIONAL EXCLUSIONS ENDORSEMENT - Continued

B.  The cost of abatement, mitigation, removal or disposal of mold, mildew and/or other conditions affecting indoor air quality.

This exclusion also includes:

1)  Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with the above; and

2)  Any obligation to share **damages** with or repay someone else who must pay **damages** because of such injury or damage.

6.  **Assault & Battery Exclusion - Absolute**
This insurance does not apply to claims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the **insured**, and/or his employees.

7.  **Punitive or Exemplary Damage Exclusion**
This insurance does not apply to **damages** awarded as punitive or exemplary damages by a court of law or jury or agreed to in advance by the **insured**.

All other terms and conditions of this policy remain unchanged.

Endorsement No.  **At Inception**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE MO.  DAY  YR. | | | ISSUED TO: | ISSUED BY: |
|---|---|---|---|---|---|
| **HSLL-31135** | 6 | 2 | 2017 | **QUANTUM ULTRA LOUNGE, INC. DBA ONE ENTERTAINMENT-THE MOOSE LOUNGE** | **Hudson Specialty Insurance Company 100 William Street, 5th Floor New York, NY  10038** |

### THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY.

### ELECTRONIC DATA AND CYBER RISK EXCLUSION

In consideration of the premium charged, it is understood and agreed that no coverage is provided under the policy to which this endorsement is attached, for any claim for injury or **damages**, directly or indirectly, arising out of, caused by, contributing to or resulting from any:

1. Functioning, nonfunctioning, misfunctioning, availability or non-availability of:

   a.  the internet or similar facility; or
   b.  any intranet or private network or similar facility; or
   c.  any website, bulletin board, chat room, search engine, portal or similar third party application service.

2. Alteration, corruption, destruction, distortion, erasure, theft or other loss of or damage to data, software, information repository, microchip, integrated system or similar device in any computer equipment or non-computer equipment or any kind of programming or instruction set;

3. Loss of use or functionality, whether partial or entire, of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic and any ensuing inability or failure of the **insured** to conduct business.

This exclusion supplements any exclusion elsewhere in the policy.

COMMERCIAL GENERAL LIABILITY
CG 21 75 06 08

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY INSURANCE COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a. Physical injury that involves a substantial risk of death; or

    b. Protracted and obvious physical disfigurement; or

    c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or

      (2) Outside of the United States in the case of:

         (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         (b) The premises of any United States mission; and

      c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

   Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

     © Insurance Services Office, Inc., 2008

Endorsement No.  At Inception

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE MO. DAY YR. | | | ISSUED TO: | ISSUED BY: |
|---|---|---|---|---|---|
| **HSLL-31135** | 6 | 2 | 2017 | **QUANTUM ULTRA LOUNGE, INC. DBA ONE ENTERTAINMENT-THE MOOSE LOUNGE** | **Hudson Specialty Insurance Company 100 William Street, 5th Floor New York, NY  10038** |

### THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED - EMPLOYEES ENDORSEMENT

This endorsement modifies insurance provided under the Liquor Liability Insurance Coverage Part.

It is agreed that the PERSONS INSURED (Section II) provision is amended to include any employee of the **named insured** while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

1. to **bodily injury** to (a) another employee of the **named insured** arising out of or in the course of his employment or (b) the **named insured** or, if the **named insured** is a partnership or joint venture, any partner or member thereof;

2. to **property damage** to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the **named insured** or (b) the **named insured**, or, if the **named insured** is a partnership or joint venture, any partner or member thereof.

All other terms and conditions of this policy remain unchanged.

Endorsement No.  At Inception

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE MO. DAY YR. | | | ISSUED TO: | ISSUED BY: |
|---|---|---|---|---|---|
| **HSLL-31135** | 6 | 2 | 2017 | **QUANTUM ULTRA LOUNGE, INC. DBA ONE ENTERTAINMENT-THE MOOSE LOUNGE** | **Hudson Specialty Insurance Company 100 William Street, 5th Floor New York, NY  10038** |

### THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY.

### MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, it is mutually agreed and declared that the minimum earned premium for this policy is $ ▮▮▮▮▮▮ and that such minimum earned premium is not subject to short rate or pro rata adjustment in the event of cancellation by the **Insured**.

All other terms and conditions of this policy remain unchanged.

Form No. MEP-14 (Ed.11-89)

Endorsement No.  At Inception

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE MO. DAY YR. | | | ISSUED TO: | ISSUED BY: |
|---|---|---|---|---|---|
| HSLL-31135 | 6 | 2 | 2017 | QUANTUM ULTRA LOUNGE, INC. DBA ONE ENTERTAINMENT-THE MOOSE LOUNGE | Hudson Specialty Insurance Company 100 William Street, 5th Floor New York, NY 10038 |

## THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY.

### INJURY TO INDEPENDENT CONTRACTORS EXCLUSION

In consideration of the premium charged, it is agreed that the insurance afforded by this policy does not apply to injury to any independent contractor or subcontractor, or to any employee of any independent contractor or subcontractor, engaged to perform any work for the **insured** or by anyone who performs any service for the benefit of the business of the **insured**, whether compensated by the **insured** or not.

All other terms and conditions of this policy remain unchanged.

Form No. ICX-1 (Ed. 12/04)

ENDORSEMENT NO. At Inception

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE MO, DAY YR. | | | ISSUED TO: | ISSUED BY: |
|---|---|---|---|---|---|
| HSLL-31135 | 6 | 2 | 2017 | QUANTUM ULTRA LOUNGE, INC. DBA ONE ENTERTAINMENT-THE MOOSE LOUNGE | Hudson Specialty Insurance Company 100 William Street, 5th Floor New York, NY 10038 |

## THIS ENDORSEMENT CHANGES THE POLICY – PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the **INSURED** (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. Nothing in this endorsement constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United State or of any state in the United States. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the **INSURED** (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

Commissioner
State Office Bldg, Room 3110
Salt Lake City, UT 84114

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

Dina Daskalakis
Hudson Excess Insurance Company
Administrative Office
100 William Street, 5th Floor
New York, NY 10038

Form No. HSOS-1 (09/2004, Rev. 03/2009)